**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

UNA URQUHART, on behalf of herself and others
similarly situated,

     Plaintiff,

vs.                                                  Case No: 8:06-cv-1418-T-17-EAJ

MANATEE MEMORIAL HOSPITAL, D/B/A LAKEWOOD
RANCH MEDICAL CENTER, UHS MANATEE, INC.;
UNIVERSAL HEALTH SERVICES, INC.,

     Defendants,
_____/

**ORDER ON MOTION TO DISMISS**

     This cause comes before this Court on Defendants', Manatee Memorial Hospital, L.P, d/b/a Lakewood Ranch Medical Center, UHS of Manatee, Inc.; and Universal Heath Services Inc., Motion to Dismiss Plaintiff's Second Amended Complaint for lack of standing (Dkt. 42) and response thereto (Dkt. 45). For the reasons set forth, Defendants' motion is **GRANTED.**

**BACKGROUND**

     Una Urquhart ("Plaintiff") received inpatient treatment at Lakewood Ranch Medical Center ("LRMC") between April 11, and April 21, 2005, and received outpatient treatment at LRMC between April 22 and May 2005. At the time, she was an uninsured, self-pay patient. On or about April 11, 2005, Plaintiff received and signed a Condition of Service agreement as a prerequisite to her treatment at LRMC, which included a "Financial Agreement" in paragraph four. (Dkt. 1). Paragraph four states the following:

> THE PATIENT/APPROPRIATE GUARANTOR IS OBLIGATED TO PAY THE ACCOUNT OF THE HOSPITAL/PROVIDER/PHYSICIAN IN ACCORDANCE WITH THE REGULAR RATES AND TERMS OF THE HOSPITAL/PROVIDER/ PHYSICIAN. SHOULD THE ACCOUNT BE REFERRED TO AN ATTORNEY OR

COLLECTION AGENCY FOR COLLECTION, ACTUAL ATTORNEY'S AND COLLECTION FEES SHALL BE PAID BY THE PATIENT/GUARANTOR. ALL DELINQUENT ACCOUNTS MAY BEAR INTEREST AT THE LEGAL RATE. IT IS UNDERSTOOD THAT UNTIL SUCH TIME AS ALL DEBTS ARE PAID, THE HOSPITAL/PROVIDER/PHYSICIAN, THEIR ATTORNEY AND/OR THEIR COLLECTION AGENCY MAY CONTACT THE PATIENT OR GUARANTOR IN WRITING OR BY PHONE AT THEIR PLACE OF EMPLOYMENT OR RESIDENCE DURING NORMAL HOURS TO DISCUSS OR REQUEST PAYMENT OF THE CHARGES. IT IS UNDERSTOOD THAT AT ANY TIME PRIOR TO PAYMENT IN FULL, THE HOSPITAL/PROVIDER/PHYSICIAN, THEIR ATTORNEY AND/OR COLLECTION AGENCY MAY CONTACT THE PATIENT'S OR GUARANTOR'S EMPLOYER FOR THE PURPOSE OF EMPLOYMENT VERIFICATION OR HISTORY. I FURTHER UNDERSTAND THAT I AM COMPLETELY FINANCIALLY RESPONSIBLE FOR THE CHARGES FOR THESE SERVICES. I ALSO UNDERSTAND IT IS IMPOSSIBLE TO KNOW THE EXACT AMOUNT OF SERVICES BEING PROVIDED AND UNDERSTAND ANY ESTIMATE OF DOLLARS IS ONLY AN APPROXIMATE COST.

Plaintiff claims that Defendant, University Health Services, Inc. ("UHS"), which operates and manages LRMC through Defendant UHS of Manatee, Inc., is the third largest hospital system in the United States. UHS operates 44 hospitals in 23 states and Washington, DC, and determines the pricing structure and policies for uninsured self-pay patients. UHS and its member hospitals maintain Chargemaster documents, spreadsheets that contain gross charges for each medical product and service. (Dkt. 45). Defendants charged Plaintiff $65,511.70 for her medical treatment based on the Chargemaster schedule. Plaintiff alleges that the total costs for Defendants' services and supplies for both inpatient and outpatient treatments were approximately $16,805.00 and further claims that she offered to pay the Defendants $24,000.00 while in the midst of her treatments on April 25, 2005, which Defendants refused to accept. Additionally, Plaintiff asserts that LRMC discounts its gross charges for managed care companies approximately 67% and typically collects approximately 32% of the gross charges as payment from those companies.

Plaintiff's Second Amended Complaint states that her bill has been sent to collections and she has received dozens of telephone calls from collections agents and Defendants' employees.

She also fears more unreasonable charges and claims that she is deterred from receiving further medical treatment as a result. In addition, she alleges that Defendants have issued adverse reports to credit agencies. However, the complaint does not state any facts as to whether she has ever paid a portion of the bill or whether she has attempted any further negotiations with the hospital to set up some sort of payment plan after her treatment ended on or about May 8, 2005.

Plaintiff filed a complaint with class action allegations on behalf of herself and others similarly situated. The amended complaint alleges that Defendants: (1) breached their contract with her and other similarly situated self-pay patients by charging unreasonable rates, and (2) violated Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") by failing to disclose material information regarding rates.

## STANDARD OF REVIEW

Standing inquiries involve both constitutional and prudential limitations. *Warth v. Seldin*, 422 U.S. 490, 498 (1975). In deciding a motion to dismiss for lack of standing, "general factual allegations of injury resulting from the defendant's conduct will suffice." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992). Trial courts must construe the complaint in favor of the complaining party and accept as true all material allegations in the complaint. *Warth*, 422 U.S. at 501. However, if the facts providing jurisdiction are themselves challenged, the court is allowed to judge the facts as it sees fit. *Barnett v. Okeechobee Hospital*, 283 F.3d 1232, 1237-38 (11th Cir. 2002). The trial court may also allow or require the plaintiff to supply further allegations of fact sufficient to confer standing. *Warth*, 422 U.S. at 501-02. If the plaintiff's standing does not appear after given that opportunity, the complaint must then be dismissed. *Id.* at 502. Standing is a threshold jurisdictional issue that must be addressed before examining the merits of a party's claims. *Dillard v. Baldwin County Comm'rs,* 225 F.3d 1271, 1274 (11th Cir. 2000).

## **DISCUSSION**

Defendants seek to dismiss the Plaintiff's Second Amended Complaint for lack of standing under Fed. R. Civ. Pro. Rule 12(b)(1). There are three constitutional requirements for establishing the "case or controversy" within the meaning of Article III to establish standing. *Warth,* 422 U.S. at 498. First, plaintiff must allege an "injury in fact," specific facts that demonstrate a concrete and particularized invasion of a legally protected interest that is "actual and imminent." *Lujan*, 504 U.S. at 560. Second, the plaintiff's injury must be fairly traceable to the defendant's challenged behavior. *Lujan*, 504 U.S. at 560. Finally, the court's favorable decision must be likely to redress the plaintiff's injury. *Id*. at 561.

In their Motion to Dismiss, Defendants assert that Plaintiff has not alleged an injury in fact because she has not yet paid anything. (Dkt. 42). However, the standard in the motion to dismiss stage is low and all Plaintiff needs do is allege a real or threatened injury to meet the requirements of step one. *Lujan,* 504 U.S. at 561. In her Second Amended Complaint, Plaintiff claims that she has been injured by the fact that her $65,511.70 bill has been sent, in its entirety, to collections.(Dkt. 39). Plaintiff asserts she attempted to negotiate a price of $24,000.00 for her hospital treatment, which LRMC denied. (Dkt. 45). Defendants' Declaration from Gerald Christine reveals that she discussed her debt on April 26, 2005, prior to completing her treatment. (Dkt. 42 Def. Ex. B). Since that time she has not alleged any further negotiations with LRMC, nor has she made any claims that she has attempted to pay any of the charges. (Dkt. 45). She further claims that she is afraid to pursue further medical treatment for fear of grossly disproportionate prices, and that her credit rating has been harmed negatively by having a bill in collections. Accepting these allegations as true, Plaintiff has met her burden for step one of the standing evaluation.

The second requirement to establish standing is proximate causation. *Lujan*, 504 U.S. at 650. Plaintiff must show a connection between the unreasonable charges and her injury. The collections procedures alleged are consistent with the terms set forth in the financial agreement that states that the hospital or collection agency may contact the patient at any time prior to payment in full. (Dkt. 1). The agreement also makes it clear that at the time of admission into the hospital, it is impossible to give an exact cost of the total charges. Any patient who has not paid her medical bill in full could be subject to collections proceedings, regardless of the "reasonableness" of the charges. The injury related to collections is not one that has been created by unreasonable charges, but by Plaintiff's lack of payment over the course of almost two years.

Plaintiff cites two cases with relation to the actionability of false credit reports and their defamatory results, both of which are distinguishable from our case. In *Northside Fire Extinguisher*, the plaintiffs purchased a truck, made timely payments, and later returned the truck because it was defective. *Northside Fire Extinguisher Service and Welding Supplies, Inc. v. Wilson Davis Ford, Inc.,* 423 So. 2D 55, 56 (Fla. Dist. Ct. App. 2d 1983). Later, the seller reported the truck as repossessed and sent the repossession notice to three credit agencies. *Id.* The Second District Court of Appeals found that reporting the vehicle as repossessed was defamatory. *Id.* The present case is distinguishable because Plaintiff does not claim that she received defective treatment from LRMC. Instead she made one attempt to negotiate the bill prior to completing treatment and does not assert any further attempts to negotiate or pay her bill. (Dkt. 39). The Second Amended Complaint was filed almost two years after she made the failed negotiation, during which time a reasonable person would expect to have her bill sent to a collections agency and have it negatively affect her credit. There is no validity to the argument that the reporting was false and defamatory because it was fully legitimate under the circumstances.

The Plaintiff's second case, *Matthews*, was a similar case about a car returned prior to paying the balance due to an accident. The finance company falsely reported the balance due, negatively affecting the plaintiff's credit. Again, this is distinguishable from the present case because the $65,511.70 reported to the collections agency is the amount Plaintiff owes until she pays it or negotiates a lower price. Even if the charge is unreasonable, it cannot be considered "false" credit reporting after Plaintiff has failed to pay her bill for almost two years.

Plaintiff claims that because Defendants breached their contract by imposing inflated charges, Plaintiff was not obligated to pay under hornbook contract law. (Dkt. 45). However, Plaintiff's attempt to pay $24,000.00 indicates that she agrees that she received a valuable service from LRMC and does have an obligation to pay LRMC. In addition, the cited Texas case *Hernandez* also mentions other hornbook contract law that states that courts should considered the extent of the benefit the non-breaching party would anticipate from full performance when determining the materiality of the breach. *Herandez v. Gulf Group Lloyds,* 875 S.W.2d 691, 693 (Tex. 1994). As the non-breaching party, Plaintiff has already received the full benefit from her inpatient treatment and will not receive any further health benefits. While the Court must accept the plaintiff's allegations as true, it is a stretch to say that the inflated charges on their own caused Plaintiff's injuries.

The third requirement for standing is redressability. Plaintiff argues that UHS charges unreasonable rates to uninsured patients. (Dkt. 39). While Florida law requires charges to be reasonable, Plaintiff still fails to indicate steps the Court may take to redress her injury. If the Court were to issue an injunction against UHS to prevent it from charging "unreasonable" prices, the court would also have to determine what prices were "reasonable" for not only her procedure, but every other hospital procedure. This goes against constitutional Article III considerations of justiciability and separation of powers. *Flast v. Cohen*, 392 U.S. 83, 97 (1968).

"Federal judicial power is limited to those disputes which confine federal courts to a rule consistent with a system of separated powers and which are traditionally thought to be capable of resolution through the judicial process." *Flast* 392 U.S. at 97. Medical regulation issues have typically been resolved by the legislative process. The Florida Patient's Bill of Rights was designed to help improve communication between healthcare providers and their patients and decrease misunderstandings. Fla. Stat. § 381.026 (2006).  Included in this Bill of Rights are the patient's financial rights to receive a reasonable estimate of charges prior to treatment, information on available financial resources upon request, and the right to medical treatment regardless of the method of payment. *Id.* It is clear from within this statute that regulating healthcare provider-patient relationships is clearly within the sphere of the legislative branch. It is not within the scope of judicial powers to decide medical billing procedures and pricing, and the Court may not issue an advisory opinion in this regard.

## CONCLUSION

Although Plaintiff has alleged an injury in fact, she fails to show proximate cause between Defendants' alleged illegal behavior and her injury. In addition, the Court is unable to redress Plaintiff's injury without violating Article III of the U.S. Constitution. Accordingly, it is

**ORDERED** that Defendants' motion to dismiss (Dkt. 42) be **GRANTED** based on lack of standing. The Clerk of the Court is directed to close this case.

**DONE and ORDERED** in Chambers, in Tampa, Florida, on this 6th day of July, 2007.



ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE